By the Court, Nelson, Ch. J.
The building xvas undergoing repairs at the time of its destruction by fire, and the principal question in the case is, whether such repairs are included in the memorandum of special rates. If so, the policy was undoubtedly suspended; for one of its provisions was, that in case the building should be appropriated, applied or used to or for the purpose of carrying on or exercising therein any trade, business or vocation denominated hazardous or extra-hazardous, or specified in the memorandum of special rates, &c., the policy should be of no effect so long as the building should be so appropriated, applied or used. The memorandum referred to specifies “houses building or repairing;” and it is insisted that the repairs in this case fall within the last branch of this clause, viz. house repairing. I think not. It is manifest that the clause, taken in connection with the provision in the policy, re *14 lates to carrying on the trade or occupation of house building and house repairing in or about the building insured, and not to the repairs of the particular building itself. It was the appropriation of the building to these purposes, that the provision in the policy-was directed against and prohibited. The language is, that the building shall not be “ appropriated, &c. for the purpose of carrying on or exercising therein any trade, business or vocation” “.specified in the memorandum of special rates among others, “ houses building or repairing.” It would be perverting a very plain and explicit provision of the contract, to apply either branch of the phrase “houses building or repairing,” to the subject of the insurance itself; and, ill respect to the first branch, such an application would be especially absurd and nonsensical, for it would amount to a prohibition against building a house already built.
Again, to adjudge that the clause imder consideration relates to the repairs of the house insured, would have the effect to cut off all right of making any repairs, however proper and necessary ; a construction that should not be admitted, except upon the most clear and explicit terms.
In the case of Dobson v. Sotheby, (1 Mood. & Malk. 90.) the policy was on a building in which no fire ivas to be kept, or hazardous goods deposited. The premises required tarring, and a fire was consequently lighted, and a tar barrel brought into the building for the purpose of performing the necessary operations. In the absence and by the negligence of the plaintiff’s servant, the tar boiled over, took fire, communicated with that in the barrel, and the premises rvere burned down. Lord Tenterden observed, that “ the condition must be understood as forbidding only the habitual use of fire, or the ordinary deposit of hazardous goods; not their occasional introduction for a temporary purpose connected with the occupation of the premises. The common repairs of a building necessarily require the introduction of fire upon the premises; and one of the great objects of insuring, is security against the negligence of servants and workmen.”
The remaining question in the case, viz. as to the effect of the *15 new erections upon the contract, depends upon two other conditions annexed to the policy. These conditions are, 1. “ If, after insurance, &c. the risk shall be increased by any means whatever within the control of the assured, or if such buildings or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring, such insurance shall be void and of no effectand 2. “ If, during the insurance, the risk be increased by the erection of buildings, or by the use or occupation of neighboring premises, or otherwise, or if, for any other cause, the company shall so elect, it shall be optional with the company to terminate the insurance after notice given to the assured or his representative of their intention to do so; in which case the company shall refund a rateable proportion of the premium.” The latter condition-it is not material to notice, as the policy is unaffected thereby until the company elect to interfere and put an end to it on the happening of any or either of the events provided against; and as it respects the former, the judge charged very explicitly in relation thereto.
It was insisted by the counsel for the defendants, that the erection of the new buildings on the premises of the plaintiffs adjoining the building insured, together with the alterations in the latter, in judgment of law enhanced the risk insured against, and per se avoided the policy; and that the learned judge, therefore, erred in submitting the question to the jury as matter of fact. There axe several cases directly holding the contrary. A building may be altered so as to vary from the description in the representation, if the risk is not thereby increased, as was decided in the case of The Jefferson Ins. Co. v. Cotheal, (7 Wend. 72.) There, the assured in a fire policy upon a steam saw-mill, represented it to be a “ wooden building about one hundred and thirty feet long by thirty feet broad.” An addition was afterwards put up on the side for a boiling house, making the building for about forty feet of its length in the centre, forty feet broad, instead of thirty feet as it was represented. It was submitted to the jmy Avhether the risk was thereby increased, who fotind it was not, arid gave a verdict in favor of the assured for the loss". The same" doctrine was laid down *16 and applied in the case of Stebbins v. The Globe Ins. Co. (2 Hall, 632,) and in Stetson v. Mass. Mutual Ins. Co. (4 Mass. R. 330.) See also 1 Phillips on Ins. 290. In Stebbins v. The Globe Ins. Co. the plaintiff had erected buildings contiguous to the one injured, upon ground vacant at the time of the insurance, and the question was left to the jury whether or not the risk was thereby materially enhanced.
As there is no express prohibition contained in the policy against the erection of additional or adjoining buildings, it is not for the court to interpolate such a condition by construction or implication, so as to avoid the contract whether the company have sustained any injury thereby or not; and especially should we not do so, when we see that the parties themselves have taken care expressly to provide against such alterations or additions as materially enhance the risk and thereby operate to the prejudice of the company.
I think the case was properly submitted to the jury, and that we cannot consistently disturb the verdict upon the evidence before us.
New trial denied.